UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States,                                        Criminal No. 05-159-02 (JRT/FLN)

                    Plaintiff,

        v.                                            **REPORT AND RECOMMENDATION**

Frederick James Moore,

                    Defendant.
        _____

            Erica H. MacDonald, Assistant United States Attorney, for the United States.
                    Craig E. Cascarano, for Defendant.
        _____

        **THIS MATTER** came before the undersigned United States Magistrate Judge on August

17, 2005, on Defendant's Motion to Suppress Evidence Obtained Through Illegal Search [#60].  The

matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636

and Local Rule 72.1(d).  For the reasons which follow, this Court recommends Defendant's Motion

be denied.

## I.  FINDINGS OF FACT

        Defendant Frederick James Moore has been charged with Possession with Intent to

Distribute, Conspiracy to Distribute, Distribution of Methamphetamine, and Possession of a Firearm

in Furtherance of a Drug Trafficking Crime.  See Superseding Indictment [#51].

        On January 21, 2005, Detective Mike Helman submitted an Application and Affidavit for

Search Warrant for a town home in Maple Grove, Minnesota.  See Gov't Ex. 2.  Detective Helman

is a licensed police officer and detective with the Maple Grove Police Department.  At the time of

the submission, Helman was assigned to the Anoka Hennepin Drug Task Force.  Id.  He had

received training from the DEA and BCA, and had conducted numerous controlled substance investigations. Helman relayed the facts in the application based upon his personal involvement in the investigation of Defendant.

In the Affidavit, Helman stated that he had received information from "numerous concerned citizens" that narcotics activity was occurring at a specific residence in Maple Grove. Id. The citizens reported that people visit the home for short periods of time, usually in the late evenings. Helman stated three different citizens told him they observed people visit the house, and that once they noticed the windows open and the air conditioning running even though the temperature was in the low twenties. Id.

The fire department was called to the home in November 2004 for a fire alarm caused by a water flow. The fire department reported that the occupant of the residence identified himself as Frederick James Moore. Moore stated that he rented the property from Renee Bacotti and that his date of birth was December 29, 1980. Moore explained that the water flow arose from a broken sprinkler head. Id.

Helman stated that he ran the criminal history and a driver's license check for Frederick James Moore. The criminal history showed Frederick James Moore with a date of birth of November 27, 1980, and several aliases. Moore had been arrested in 2001 for first-degree possession of drugs, in connection with a case involving 250 grams of methamphetamine. He was arrested on three other occasions in 2003 and 2004 for possession of a firearm, possession of a firearm without a permit, and for unlawful possession of a pistol or assault weapon. Helman showed a booking photo of Moore to an officer who reported to the fire alarm. The officer identified the man in the photo as the same man at the town home in Maple Grove. Id.

In December 2004, Helman searched the trash from the town home. He found plastic bags that contained residue that tested positive for cocaine base. He also found packages of cigars that are commonly used to smoke marijuana and a paper bag he believed smelled like marijuana. Id.

Helman again conducted a trash search within 72 hours of submitting the affidavit and application. He found marijuana residue, cocaine base, and a box of cigars with the tobacco removed. He also found a letter from Hennepin County addressed to Moore, which stated his date of birth as November 27, 1980. Id.

Helman submitted that he spoke again with the "concerned citizens," who informed him that suspicious traffic to the town home was still occurring in the early morning hours -- around 3:00-4:00 A.M. Helman showed a photo of Moore to the citizens, who identified him as the person living in the Maple Grove town home. He also showed them a picture of Daniel Bacote, who lives near Moore in the town home complex. The neighbors told him that Bacote frequented Moore's home. Helman had a Confidential Informant (CI) buy from Bacote within 72 hours of submitting the affidavit and application. While he was in Bacote's house, the CI learned that he was associated with Moore. Id.

Helman stated that he confirmed from other detectives and drug task forces that Moore carried a gun at all times, was involved with gangs in Minneapolis, and that he sold guns illegally. Id.

Based on this information, Helman stated he had probable cause to believe that the town home in Maple Grove was being used as an outlet for drug trafficking. He requested the court issue a warrant allowing the search of the Maple Grove town home and the seizure of evidence of possession or sale of illegal drugs. He requested permission to seek particular evidence, including:

controlled substances; dispensing equipment and drug paraphernalia; records showing sources of supply and profits from the sale or distribution of controlled substances; firearms and ammunition; electronic equipment and software used to store records; profits and proceeds from narcotics transactions; and photos and videos that chronicle drug usage and transactions.

Helman further requested that the court permit a nighttime search and unannounced entry. He stated that a nighttime search was necessary to prevent the destruction or removal of the objects of the search because the citizens had indicated that most suspicious activity occurred outside the scope of a daytime warrant. He explained that executing officers needed the cover of darkness for officer safety because of the mention of firearms in Moore's criminal history and because other detectives knew him to carry a gun. Further, Helman stated, another warrant would be served at the same time in the same complex, and that the location of the premises provided no easy access without being noticed from afar, which would compromise the safety of the officers and allow the destruction of evidence. Helman stated, based on his training and experience, that an unannounced entry was necessary because people involved in the use and sales of controlled substances often have prearranged plans for disposal of contraband if forewarned of police presence.

Helman obtained the search warrant, which permitted a nighttime, unannounced entry, on January 21, 2005, from Hennepin County District Court. The record does not contain information regarding when the warrant was executed or what evidence was recovered.

## II.  CONCLUSIONS OF LAW

### A.    There Was Probable Cause to Issue the Search Warrant

Defendant Moore challenges the search warrant on its four corners, alleging that it was

issued without probable cause.[1]  Searches conducted pursuant to a warrant are reviewed to determine whether the information in the warrant application and supporting affidavit provided probable cause for the search.  <u>Illinois v. Gates</u>, 462 U.S. 213, 236 (1983).  "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place."  <u>United States v. Fladten</u>, 230 F.3d 1083, 1085 (8th Cir. 2000).  A court does not evaluate each piece of information independently, but rather considers all of the facts for their cumulative meaning.  <u>United States v. Allen</u>, 297 F.3d 790, 794 (8th Cir. 2002).  The task of a court issuing a search warrant is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  <u>Gates</u>, 462 U.S. at 238; <u>see also</u> <u>United States v. Salter</u>, 358 F.3d at 1080, 1084 (8th Cir. 2004).

In reviewing the decision of the issuing court, this Court must ensure that the issuing court had a substantial basis for concluding that probable cause existed.  <u>United States v. Oropesa</u>, 316 F.3d 762, 766 (8th Cir. 2003) citing <u>Gates</u>, 462 U.S. at 238-39.  Because reasonable minds may differ on whether a particular search warrant affidavit establishes probable cause, the magistrate's determination is accorded great deference.  <u>U.S. v. Wajda</u>, 810 F.2d 754, 760 (8th Cir. 1987) citing <u>United States v. Leon</u>, 468 U.S.  897, 914 (1984).

In this case, the contents of the search warrant application and affidavit provided probable cause for the search of the town home.  The affidavit included information that Moore was involved

---

[1]

In his Motion, Moore also argued that evidence should be suppressed because the warrant was illegally executed.  <u>See</u> Def. Motion [#60] p. 2.  At the suppression hearing, however, Moore offered no argument regarding the execution of the warrant, except to the extent that the warrant permitted a nighttime, unannounced entry.

in the possession of controlled substances.  Citizens reported seeing suspicious late-night visitors

to the town home, and that Bacote frequented the home.  The CI, who conducted a controlled buy

from Bacote, indicated that Moore and Bacote were associates.  Other detectives informed Helman

that Moore carried a gun at all times and sold guns illegally.

       **1.       The Affidavit Properly Included Information Provided by Anonymous Citizens and the CI**

      The affidavit included information provided by "concerned citizens" that indicated Moore

was involved in the sale of controlled substances from the town home.  The affidavit also included

information from a CI, who indicated that Moore was an associate of Bacote, who was known to sell

controlled substances.  When an anonymous informant provides information in support of a search

warrant, the issuing magistrate must consider the informant's reliability and the basis of his

knowledge.  Gates, 462 U.S. at 223.  The information from a confidential informant is sufficiently

reliable if it is corroborated by other evidence, or if the informant had a history of providing reliable

information.  United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993).

      Here, the credibility of the concerned citizens and the CI was established by Helman's

independent investigation of Moore.  See United States v. Olson, 21 F.3d 847, 850 (8th Cir. 1994)

(CI information was reliable where independent investigation of the task force agents corroborated

CI information).  Helman's searches of Moore's trash revealed cocaine base, marijuana residue, and

a letter naming Moore and his birth date.  Moore's criminal history revealed that he was previously

arrested for drug possession and the unlawful possession of a firearm.  Other detectives informed

Helman that Moore carried a gun at all times, and was involved in gang activity and the illegal sale

of guns.  The information provided by the anonymous citizens and CI was sufficiently reliable

because it was corroborated by other evidence.

In sum, the information included in the affidavit, allows a reasonable person to conclude that evidence of Moore's alleged narcotics dealings would be found at his residence. Under the totality of the circumstances, the issuing judge had a substantial basis for concluding that probable cause existed to issue the search warrant for Moore's Maple Grove town home. Moore's motion to suppress the warrant for lack of probable cause should be denied.

**B.    The Warrant Was Properly Issued as a Nighttime, Unannounced Entry Warrant**

The common law requirement that officers must knock and announce their presence before entering is part of the Fourth Amendment reasonableness inquiry. Wilson v. Arkansas, 514 U.S. 927 (1995). Under the common law, no-knock entries have been found reasonable in situations involving threats of physical violence, prisoner escapes, and the likely destruction of evidence. United States v. Murphy, 69 F.3d 237, 243 (8th Cir. 1995). "The showing needed to justify a no-knock entry 'is not high.'" United States v. Weeks, 160 F.3d 1210, 1213 (8th Cir. 1998), quoting Richards v. Wisconsin, 520 U.S. 385, 394 (1997). A "no-knock" entry is justified if law enforcement officials have a reasonable suspicion that knocking and announcing their presence under the particular circumstances would inhibit the effective investigation of the crime, for example, by allowing for the destruction of evidence. Id., citing Richards, 520 U.S. at 395.

Nighttime searches are also valid under federal law, and the necessity of nighttime searches is considered under the same framework as that used to consider the necessity of unannounced entries. See e.g., United States v. Appelquist, 145 F.3d 976, 978 (8th Cir. 1998). Federal law allows a nighttime search if the judge who issues the warrant has probable cause to believe drugs will be on the property when it is searched. See 21 U.S.C. § 879; Gooding v. United States, 416 U.S. 430, 458 (1974). A nighttime search conducted by state law enforcement officers does not offend any

-7-

federal interest when it is clearly valid under federal law.  Appelquist, 145 F.3d 976, 978 (8th Cir. 1998).

In this case, the issuance of a nighttime, unannounced entry warrant did not violate the Fourth Amendment.  The warrant contained information that Moore was known to keep firearms on his person and that he had previously been arrested for unlawful possession of a pistol or assault weapon.  Additionally, the issuing judge had probable cause to believe drugs would be found at the residence.  The affidavit included specific information regarding the need for a nighttime, unannounced entry, and the Court is convinced the issuing judge satisfied the "duty...to determine whether the facts and circumstances...justified dispensing with the knock-and-announce requirement."  Weeks, 520 U.S. at 395.  The warrant properly permitted a nighttime, no-knock entry.

### C.    The Search Warrant Described with Adequate Particularity the Items to be Searched and Seized

Under the Fourth Amendment, a search warrant must be sufficiently definite to allow those who execute the warrant to identify the property to be seized with some particularity.  See United States v. Tyler, 238 F.3d 1036, 1039 (8th Cir. 2001).  The particularity requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of a wide-ranging exploratory search.  Maryland v. Garrison, 480 U.S. 79, 84 (1987).  The particularity requirement is examined under a standard of practical accuracy rather than a hypertechnical one.  United States v. Mosby, 101 F.3d 1278, 1281-82 (8th Cir. 1996).  If the search warrant authorizes the seizure of property involved in the defendant's commission of crimes, the warrant is adequately specific.  See Tyler, 238 F.3d at 1039; United States v. Stelten, 867 F.2d 446, 450 (8th Cir. 1989). In deciding whether a warrant has met the particularity requirement, the court must read the list of items to be seized in the context of all the language in the warrant and must consider the total

-8-

circumstances surrounding the case and the issuance of the warrant.  See Milliman v. State of Minnesota, 774 F.2d 247 (8th Cir. 1985); United States v. Caves, 890 F.2d 87, 92 (8th Cir. 1989).

In this case, the warrant authorized the search of Moore's residence.  The affidavit included the address of the residence.  The application set forth the grounds on which to search the residence, including that Moore maintained firearms and illegal substances at the residence.  The application set forth the items related to Moore's alleged illegal activity that were likely to be found in the residence.  The warrant authorized the seizure of controlled substances, paraphernalia, records, and currency.  Each of the items listed in the warrant related to the suspected narcotics trafficking described in the supporting affidavit.

The Court is satisfied that the warrant adequately specified the property to be searched and seized, and ensured that the police seized only evidence related to the suspected criminal activity. The Court will not suppress the warrant for insufficient specificity.  The search warrant was also supported by adequate probable cause and the evidence found as a result of the search of Moore's residence is admissible.  Moore's motion to suppress such evidence should be denied.

### III.  RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence Obtained through Illegal Search [#60] should be **DENIED.**

DATED: August 31, 2005                    s/ *Franklin L. Noel*
                                          FRANKLIN L. NOEL
                                          United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with

the Clerk of Court and serving on all parties, on or before **September 16, 2005**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **September 16, 2005** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.